JUDGE HELLERSTEIN

08 CV 7076

Donald S. Zakarin (DZ-6355) (dzakarin@pryorcashman.com)
Frank P. Scibilia (FS-3984) (fscibilia@pryorcashman.com)
PRYOR CASHMAN LLP
410 Park Avenue
New York, New York 10022
(212) 421-4100
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

SONY/ATV SONGS, LLC,

                Plaintiff,

      -against-

CHICKDOWNTOWN, CHICK LLC,
AMY REED, JOHN DOES 1-10, and
XYZ CORPORATIONS 1-10,

                Defendants.
--------------------------------------------------------------X

RECEIVED
AUG 08 2008
U.S.D.C. S.D.N.Y.
CASHIERS
08 CV.

**COMPLAINT**

Plaintiff Demands A
Trial By Jury

Plaintiff Sony/ATV Songs, LLC ("Plaintiff" or "SATV"), by its attorneys Pryor Cashman

LLP, as and for its Complaint against defendants, alleges as follows:

### Parties

1.      Plaintiff SATV was at all pertinent times and is now a Delaware limited liability

corporation with its principal place of business at 550 Madison Avenue, New York, New York,

10022.  SATV, directly or through its subsidiaries and affiliates, is engaged in the business of

publishing, administering and otherwise commercially exploiting, throughout the world, original

copyrighted musical compositions.

2.      Upon information and belief, defendant Chickdowntown ("Chick") is a

Pennsylvania corporation which maintains its principal place of business at 717 Liberty Avenue

Pittsburgh, PA 15222.  Upon further information and belief, Chick owns and operates the website chickdowntown.com (the "Website").  Chick is a retailer of clothing and accessories for women and young girls.  On and via the Website, Chick supplies goods and services throughout the United States, including within the City and State of New York.  Upon information and belief, Chick also operates a "brick and mortar" retail clothing store in Pittsburgh, PA.

3.      Upon information and belief, defendant Amy Reed is an owner of Chick and the primary decision maker at the company, including with respect to advertising, promotions, and the content of the Website.

4.      Upon information and belief, defendant Chick LLC is also an owner of Chick.

5.      Defendants John Does 1-10 are other individuals who made decisions for or on behalf of Chick with respect to advertising, promotions, and the content of the Website and/or the Infringing Commercial (defined below).  The exact identity of these defendants is not presently known, but the Complaint will be amended when their identities are ascertained so that they may be specifically identified and named.

6.      Defendants XYZ Corporations 1 through 10 are advertising agencies retained by Chick in connection with, and with responsibility for, the infringing advertising campaign described further herein.  The exact identity of these defendants is not presently known, but the Complaint will be amended when their identities are ascertained so that they may be specifically identified and named.

## Jurisdiction and Venue

7.      This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act, 17 U.S.C. §101 *et. seq.*

8.    This Court has original subject matter jurisdiction of this action under 28 U.S.C. §§ 1331 and 1338(a).

9.    This Court has personal jurisdiction over the defendants. Defendants, acting alone and in concert with others, do continuous and systematic business in New York State and in this District. New York Civil Practice Law and Rules ("CPLR") § 301. This Court also has personal jurisdiction over the defendants pursuant to CPLR § 302. Defendants, acting alone and in concert with others, transact business and supply goods and services within New York State and this District. CPLR § 302(a)(1). Defendants have also committed tortious acts of copyright infringement within New York State, as described further herein. CPLR § 302(a)(3). Defendants also regularly do and solicit business within New York State and, upon information and belief, derive substantial revenue from supplying goods and services in New York State. CPLR § 302(a)(3)(i).

10.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(a).

## Facts

11.    This case involves the willful infringement by the defendants of plaintiff's copyright in the musical composition "I Want Candy" (the "Composition"). The Composition -- which was written by Bob Feldman, Jerry Goldstein, Richard Gottehrer and Bert Berns -- is extremely popular and well-known. The Composition was originally recorded in 1965 by The Strangeloves, and that recording went to number 11 on the U.S. charts. The Composition has since been covered numerous times by other artists, most famously by Bow Wow Wow in 1982. The Composition has also been covered by Spice Girl Melanie C (for the 2007 movie of the same name), Aaron Carter, Good Charlotte, and other well-known artists.

12.   The copyright in the Composition was registered on June 2, 1965 (EU 884335), and renewed on March 28, 1994 (RE 647753). Through a series of assignments, SATV came to own and control, and presently does own and control, 62.5% of the Composition. Upon information and belief, Bert Russell Music, LLC (the "Co-Owner") currently owns and controls the remaining 37.5% of the Composition.

13.   Defendants produced a television and Internet advertisement featuring (and reproducing or "synchronizing" with visual images) the Composition (the "Infringing Commercial"). Defendants did so without a synchronization or any other license from either SATV or the Co-Owner of the Composition.

14.   Defendants further reproduced, distributed, and publicly performed the Infringing Commercial on and via the Website, as well as on youtube.com and myspace.com. Defendants also caused the Infringing Commercial to be broadcast on national television and on radio, including in the two largest media markets in the U.S.: New York and Los Angeles.

15.   On May 22, 2008, promptly after discovering the Infringing Commercial, SATV contacted Chick regarding Chick's infringement and demanded that Chick immediately cease and desist from further airing or otherwise distributing the Infringing Commercial via any and all media, including, without limitation, broadcast television and the Internet. SATV further demanded that Chick provide SATV with an accurate and detailed accounting specifying the individual regions, stations, websites and total number of times the Infringing Commercial had aired. SATV demanded such information as a predicate for determining an appropriate fee for such infringing use.

16.   Despite SATV's May 22 letter, Chick continued to willfully infringe SATV's copyright in the Composition by airing and distributing the Infringing Commercial subsequent to

its receipt of that letter.

17.     In a series of e-mail correspondence that followed (in July) between SATV and Chick's counsel, Chick admitted that the Infringing Commercial had been broadcast on cable television stations "since late April," and claimed that Chick was "attempting to 'pull it.'"  Chick later claimed that it had "discontinued the [Infringing Commercial] until it can obtain a license to use it."   Chick refused, however, to provide the accounting requested by SATV and, in a transparent effort to stall and delay, demanded that SATV tell Chick what is the "annual fee" for the use and provide a copy of the copyright registration certificate.  SATV thereafter referred the matter to outside counsel.

18.     On July 24, 2008, SATV's outside counsel wrote to Chick's counsel and reiterated the demands made in SATV's May 22 letter.  Chick's (July 24) response was non-responsive, and Chick continued to nonsensically object that it had not received information regarding the "annual fee" for the use of the Composition in the Infringing Commercial, or "information as to the owner of the copyright."  SATV's counsel responded (also on July 24) that there is no such thing as an "annual fee," that the time to have obtained a license is before, not after a composition has been used, and that if Chick truly doubted that SATV was a co-owner of the copyright in the Composition, it could check with the Copyright Office or with ASCAP or BMI.  SATV's counsel again demanded the information requested in the May 22 letter, and informed Chick that if it did not receive that information within five business days, SATV would file a lawsuit.  Chick did not respond.

19.     SATV has been irreparably harmed by defendants' unlawful exploitation of the Composition in the Infringing Commercial.   Advertisers frequently request exclusivity in connection with the use of compositions, either in connection with specific product categories,

territories or complete exclusivity. The license fee capable of being charged depends on the scope of the use, the type of use, the extent to which a composition has already been used and other factors. Any unauthorized use diminishes the value of a composition and deprives SATV of the exclusive right to exploit its property in its own interest.

20.    This harm is not just theoretical. In July 2008, SATV was in the process of negotiating a license with an advertiser that wished to use the Composition in a major national media campaign for a famous national clothing retailer, for a significant licensing fee. Such use would also have yielded to SATV, in addition to the lump sum licensing fee, significant performance royalties each time the commercial aired. In late July, after seeing the Infringing Commercial on television, the advertiser decided to reconsider its use of the Composition in the campaign. The only chance SATV has to salvage that deal and reap the licensing fees to which it is entitled (if that is even still possible) is if this Court enjoins defendants' further exploitation of the Infringing Commercial. Indeed, without such an injunction, SATV will not be able to obtain the full value (or, perhaps even any value) for a license to use the Composition in any other media campaign.

21.    SATV vigorously protects the copyrights in and to the musical compositions it owns and administers. In protecting the value and integrity of its musical catalog, SATV carefully evaluates offers to license musical composition for commercial advertising use. SATV often elects not to permit compositions to be associated with a certain sponsor or product. Defendants have unlawfully usurped SATV's judgment and have simply arrogated the Composition, its value, and the goodwill associated with it for its own benefit, to the detriment of SATV

6

## FIRST CLAIM FOR RELIEF

(Copyright Infringement)

22.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 21 of this complaint as if fully set forth herein.

23.    The Composition is an original work, copyrightable under 17 U.S.C. § 102. As a lawful owner of the copyright, Plaintiff has the exclusive rights to, *inter alia*, reproduce the Composition, prepare derivative works based on the Composition, distribute copies of the Composition, and publicly perform the Composition, 17 U.S.C. § 106. Plaintiff also has the exclusive right to enter into synchronization licenses for the use of the Composition in timed relation with visual images.

24.    Defendants' unauthorized exploitation of the Composition in the Infringing Commercial constitutes an actual infringement of Plaintiff's copyright.

25.    The foregoing conduct on the part of defendants constitutes willful copyright infringement in violation of the Copyright Act, 17 U.S.C. § 101 et seq.

26.    By reason of the foregoing acts of copyright infringement and potential continued copyright infringement by defendants, Plaintiff has sustained substantial damages in an amount to be determined at trial, but believed to be excess of $500,000.00.

WHEREFORE, Plaintiff prays for judgment against the defendants as follows:

(A)    a preliminary and permanent injunction:

(1) prohibiting and enjoining defendants, their officers, directors, agents, servants, employees, subsidiaries, affiliates, assigns and licensees from further recording, manufacturing, distributing, copying, selling, promoting or advertising the Composition in the Infringing Commercial or otherwise;

7

and

(2) requiring defendants to account for and pay over to Plaintiff all revenues

derived from exploitation of the Composition as embodied in the Infringing

Commercial or otherwise;

(B)    awarding compensatory damages in an amount to be proven at trial, any additional

profits of Defendants and any other applicable statutory damages;

(C)    the costs and disbursements of this action;

(D)    an award of reasonable attorneys' fees; and

(E)    such other and further relief as the Court deems just and proper.

Dated: New York, New York
      August 8, 2008

PRYOR CASHMAN LLP

By: _____
    Donald S. Zakarin (DZ-6355)
    (dzakarin@pryorcashman.com)
    Frank P. Scibilia (FS-3984)
    (fscibilia@pryorcashman.com)
    410 Park Avenue
    New York, New York 10022
    (212) 421-4100

    *Attorneys for Plaintiff*